UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL LUTE, | ) | |
| | ) | Case No. 18-cv-07451 |
| Plaintiff, | ) | |
| | ) | Judge Sharon Johnson Coleman |
| v. | ) | |
| | ) | |
| TRANSUNION, LLC; EXPERIAN | ) | |
| INFORMATION SOLUTIONS, INC.; | ) | |
| and BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michael Lute ("Lute") filed suit against Bank of America, N.A. ("Defendant" or "BANA")[1] alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. Specifically, Lute's First Amended Complaint alleges that BANA willfully and negligently violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation into his credit disputes, including failing to verify the balances owed on a discharged debt and to mark the accounts as in-dispute. The parties filed cross motions for summary judgment. BANA has also moved to strike a declaration that Lute submitted in support of his opposition to BANA's motion for summary judgment and his reply in support of his own motion for summary judgment. For the reasons stated below, the Court denies Lute's motion for summary judgment [181], grants in part and denies in part BANA's motion for summary judgment [175], and denies without prejudice BANA's motion to strike [196].

**Background**

The following facts are undisputed unless otherwise noted. This action centers on the reporting of two consumer credit cards. Lute applied for and obtained two credit card accounts

---

[1] Lute also sued TransUnion, LLC and Experian Information Solutions, Inc., but later settled with those defendants. BANA is the only remaining defendant. (Dkts. 47, 78.)

with BANA: a MasterCard account ending in 7704, which was opened in April 2004, and a Visa account ending in 6041, which was opened in July 2012. In 2013, after more than 180 days of no payments, BANA "charged off" or wrote off the accounts as bad debt. An outstanding balance due of $29,938.30 remained on the MasterCard account and $1,216.08 on the Visa account.

In December 2016, BANA issued an Internal Revenue Service ("IRS") 1099-C "Cancellation of Debt" form to Lute for each account. Both forms contained an "identifiable event code" of "G," indicating that a decision or policy to discontinue collection was made by BANA. (Dkt. 181-2 at 2, ¶ 4; Dkt. 191 at 1, ¶ 1.) After reviewing his credit report and seeing that a balance was being reported as currently owed on both accounts, Lute called BANA on June 22, 2018. During that call, a BANA representative advised Lute that BANA was not attempting to collect the amounts owed, but would still report a balance owed, including interest and fees. (Dkt. 181-2 at 2, ¶ 5; Dkt. 191 at 1, ¶ 1.) Lute claims that the BANA representative also confirmed that his debts had been discharged and he no longer owed any balances on the accounts. (Dkt. 189-1 at 3, ¶ 12.) BANA maintains that its representative merely conveyed that it was not currently collecting on the accounts. (Dkt. 177 at 3, ¶ 12; Dkt. 195 3–4.) No collection activity has occurred on the accounts at least since the 1099-C forms were issued in late 2016.

In August 2018, Lute disputed the reporting of the two BANA accounts (among others) with a consumer reporting agency ("CRA"), TransUnion. BANA received automated credit dispute verifications ("ACDVs") regarding the two disputed accounts. (Dkt. 191 at 2, ¶ 7.) BANA confirmed the reporting of both accounts as charged off, with balances owed. (Dkts. 190-1 at 74–77, 126–29.) Further, BANA confirmed the reporting of the MasterCard account notation as "Account closed at consumer's request and in dispute under FCRA" and the Visa account notation as "Account closed at consumer's request." (*Id.* at 75, 127.)

Lute brought this lawsuit on November 9, 2018. The First Amended Complaint alleges that BANA willfully and negligently violated the FCRA by failing to reasonably investigate his disputes regarding the reporting of the two accounts pursuant to § 1681s-2(b). Lute claims that this includes BANA's failure to correct the reporting on the two accounts to reflect that the debts were discharged and failure to mark the accounts as in-dispute. Lute moves for partial summary judgment on his claim that BANA failed to mark his accounts as in-dispute. (Dkt. 181.) BANA moves for summary judgment on all of Lute's claims. (Dkt. 175.)

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). When determining whether a genuine dispute as to any material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *Lovelace v. Gibson,* 21 F.4th 481, 483 (7th Cir. 2021). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 250 (citation omitted).

**Discussion**

Congress enacted the FCRA in part to protect consumers by ensuring "fair and accurate credit reporting." 15 U.S.C. § 1681(a)(1). Section 1681s-2 sets out the duties imposed on a "furnisher of information," which is an entity that "transmits information about a particular debt owed by a particular consumer to a consumer reporting agency." § 1681s-2; *Wade v. Equifax, Inc.*, No. 02 C 3205, 2003 WL 22089694, at *2 (N.D. Ill. Sept. 8, 2003) (Manning, J.) (citation omitted).

3

The parties agree that BANA is a furnisher of information. Subparagraph (a) of § 1681s-2 imposes requirements on furnishers, including a requirement to provide accurate information to CRAs. § 1681s-2(a); *Lang v. TCF Nat'l Bank*, No. 06 C 1058, 2008 WL 5111223, at *3 (N.D. Ill. Dec. 1, 2008) (Kennelly, J.), *aff'd*, 338 F. App'x 541 (7th Cir. 2009).

"Subparagraph (b) deals with a furnisher's obligations after it receives notice of a dispute regarding 'the completeness or accuracy' of information it had provided to a CRA." *Lang*, 2008 WL 5111223, at *3; § 1681s-2(b). A furnisher's obligations under subparagraph (b) "begin when the furnisher receives notice from a CRA that a consumer disputes a reported item." *Lang*, 2008 WL 5111223, at *3. Upon receiving notice from a CRA, a furnisher must "conduct an investigation, 'review all relevant information provided by the consumer reporting agency,' report the results to the CRA, and—if information is found to be inaccurate, incomplete, or unverifiable—notify all CRAs the information was provided to and modify, delete, or block the information." *Id.* (quoting 15 U.S.C. § 1681s-2(b)(1)). "Courts have generally concluded that the FCRA requires 'reasonable' investigation and review, given the circumstances." *Shames-Yeakel v. Citizens Fin. Bank*, 677 F. Supp. 2d 994, 1004 (N.D. Ill. 2009) (Pallmeyer, J.). "Whether a defendant's investigation is reasonable is a factual question normally reserved for trial; however, summary judgment is proper if the reasonableness of the defendant's procedures is beyond question." *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (citing *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001)).

<u>1099-C Claim</u>

There is no dispute that BANA issued Lute a 1099-C form on each of the two at-issue accounts in December 2016. (Dkt. 189-1 at 2, 7, ¶¶ 8, 29.) Nor do the parties dispute that there has been no collection activity on the accounts since the 1099-Cs were issued. (*Id.* at 6, ¶ 27.) The parties disagree, however, about the impact of the 1099-C forms. BANA argues that the issuance of

4

a 1099-C form has no bearing on whether a debt is still owed. Specifically, BANA claims that the issuance of a 1099-C form alone "does not extinguish a debt, reflect that the amount is no longer owed, or coincide with BANA's decision to collect a debt." (Dkt. 176 at 14.) BANA maintains that, pursuant to IRS guidelines, it issues 1099-C forms on charged-off accounts. (*Id.*) According to BANA, there is "no steadfast period of time in which BANA makes a determination that a debt is not collectible." (*Id.*) It claims to make the determination on an individual account basis "at some point in the future after an account has charged off." (*Id.*; Dkt. 177 at 2, ¶ 7.) BANA concludes that it "has made a business decision at this time" that it does not intend to pursue collection efforts on the two accounts. (Dkts. 176 at 14; 177 at 5, ¶ 26.)

Lute claims that the "mere issuance of a 1099-C is evidence of an actual discharge." (Dkt. 189 at 9 n.16.) Regardless, Lute states that he does not rely solely on the issuance of the 1099-C forms to support that the debt was in fact discharged in this case. (*Id.* at 9) In addition to the issuance of the 1099-C forms, Lute claims the following facts show that his debt was cancelled: (1) BANA's Rule 30(b)(6) corporate representative admitted as much during his deposition; (2) during his June 2018 phone call with BANA, the BANA representative "unequivocally stated that the debt was no longer owed"; (3) BANA admits in its motion for summary judgment that it made a business decision to cease collection of the debt; and (4) BANA issued 1099-C forms with "indicator G," which evidences a business decision was made in 2016 to cease collection of the debt." (*Id.*) Lute also states, however, that BANA's decision not to pursue collection efforts was made "sometime between 2016 and 2018." (Dkt. 189-1 at 6, ¶ 26.)

The Seventh Circuit has not weighed in on the effect of a furnisher issuing a 1099-C. However, the majority of courts that have addressed the issue, including two district courts in this Circuit, have held that issuing a Form 1099-C alone is not *prima facie* evidence that a debt was discharged. *See, e.g.*, *F.D.I.C. v. Cashion*, 720 F.3d 169 (4th Cir. 2013); *Bampoky v. Daubert Law Firm,*

5

*LLC*, No. 20-CV-32, 2021 WL 1087040, at *6 (E.D. Wis. Mar. 22, 2021) (agreeing that a 1099-C form is "insufficient, on its own, to establish a *prima-facie* showing that [the plaintiff's] debt was cancelled"); *Mennes v. Capital One, N.A.*, No. 13-cv-822, 2014 WL 1767079, at *6 (W.D. Wis. May 5, 2014) ("[W]ithout additional evidence, the filing of a 1099-C form does not by itself evidence debt cancellation as a matter of law.").

Part of the confusion in cases dealing with the 1099-C issue stems from the use of the term "discharge" to mean something other than an "actual discharge." *See, e.g.*, *Gericke v. Truist*, No. 20-3053, 2021 WL 1153143, at *4 (D.N.J. Mar. 26, 2021) (noting that the nuance of the Tax Code distinguishes "discharge" from "actual discharge"). The IRS, through information letters, has noted that it "does not view a Form 1099-C as an admission by the creditor that it has discharged the debt and can no longer pursue collection." IRS Info. 2005-0207, 2005 WL 3561135 (Dec. 30, 2005). The IRS further stated that, upon the issuance of a 1099-C, "a discharge of indebtedness is deemed to occur when an identifiable event occurs *whether or not an actual discharge of indebtedness has occurred.*" *Id.* (emphasis added).

The Court need not decide whether a 1099-C form alone is sufficient to create an issue of fact as to the status of the accounts. The undisputed facts related to the 1099-C issue in this case create an issue of fact for trial regarding whether BANA's procedures were reasonable in investigating and updating Lute's account reporting in response to his disputes. The Court does not base its decision on Lute's framing of the June 2018 phone conversation with the BANA employee or the testimony of BANA's corporate representative. Rather, the Court's decision is based on the totality of evidence, including that (1) BANA has not tried to collect on this debt since it issued the 1099-C forms in December 2016; (2) BANA's employee stated during the June 2018 call that BANA was not requesting payment "since [BANA] did issue the 1099-C" and was "not attempting to

6

collect the debt"; and (3) BANA's corporate representative testified that there were no collection activities on the accounts as of June 2018, and he engaged in the following exchange:

> Q: At this time, on June 22 of 2018, this appears to be after the 1099s were issued and the debts were discharged. Is that correct?
>
> A: Yes.

(*See* Dkts. 177 at 5, ¶ 27; 180; 185-4 at 98, 100; and 195 at 3.)

Lute claims that these (and similar) statements amount to "repeated" or "unequivocal" evidence of cancellations of the debt. (Dkt. 189 at 9.) BANA claims these statements applied only to a particular moment in time, implying that it could have restarted collection efforts at some point in the future. (*See* Dkts. 195 at 3, 198 at 4, 185-4 at 100.) Both BANA's employee and corporate representative may well have been discussing a cessation of collection efforts that was transient, not permanent.[2] Additionally, given the Tax Code's dual use of the term "discharge," as noted above, the speakers could have meant either one. The Court is not in a position at summary judgment to resolve these competing inferences or interpretations, including whether BANA's procedures were reasonable in light of the underlying facts. "[T]hat is the job of a factfinder," and thus summary judgment is inappropriate with regard to this issue. *See Bampoky*, 2021 WL 1087040, at *7. BANA's motion for summary judgment is denied as to Lute's 1099-C claim.

In-Dispute Claim

The issue of whether BANA provided an "in-dispute" notation is relevant to both parties' requests for summary judgment. Lute contends that "[d]etermining the reasonableness of an investigation as a whole is a fact sensitive inquiry that is more appropriately presented to a jury."

---

[2] Lute claims that the issuance of a 1099-C with "indicator G" means that "there is no genuine dispute that Plaintiff's debts were discharged." (Dkt. 189 at 9.) As stated above, the majority view includes multiple cases that hold that the issuance of a 1099-C is not *prima facie* evidence of an actual discharge, and some of those cases do in fact involve issuance of a 1099-C with indicator G. *See, e.g., Wells Fargo Bank, N.A. v. Fraze*, No. 19-10499, 2020 WL 1615866, at *2 (D. Mass. Apr. 2, 2020); *Gericke*, 2021 WL 1153143, at *4.

(Dkt. 181-at 6.) Lute claims, however, that a failure to mark an account as in-dispute is "less fact intensive," and BANA's failure to do so in this case "is itself enough to trigger liability under the FCRA." (*Id.* at 6, 11.) BANA claims that there is no private right of action permitting a consumer to sue for a furnisher failing to include a dispute notification. (Dkt. 176 at 16–17.)

The duty of furnishers to provide notice of a dispute appears in § 1681s-2(a)(3). Neither party disputes that a consumer cannot bring an action under § 1681s-2(a). *Perry v. First Nat'l Bank*, 459 F.3d 816, 822 (7th Cir. 2006). Instead, consumers must bring any action against a furnisher for failure to follow reasonable procedures under § 1681s-2(b). The issue—germane to both BANA's and Lute's motions for summary judgment—is whether a consumer can predicate a § 1681s-2(b) claim on a furnisher's failure to note an account as disputed. On this point, both parties are incorrect.

Though the Seventh Circuit has not addressed the issue, other circuits have held that after receiving notice of a dispute, a furnisher's decision to continue reporting a disputed debt without any notation of the dispute presents a cognizable claim under § 1681s-2(b). *See, e.g.*, *Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 150 (4th Cir. 2008). Those courts have explained, however, that "a furnisher does not report 'incomplete or inaccurate' information within the meaning of § 1681s-2(b) simply by failing to report a meritless dispute, because reporting an actual debt without noting that it is disputed is unlikely to be materially misleading." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009). Rather, "[i]t is the failure to report a bona fide dispute, a dispute that could materially alter how the reported debt is understood, that gives rise to a furnisher's liability under § 1681s-2(b)." *Id.*; *Seamans v. Temple Univ.*, 744 F.3d 853, 867 (3d Cir. 2014) (finding that plaintiff's dispute "appear[ed] to have merit, and the failure to report that dispute may constitute a material inaccuracy on [the plaintiff's] credit report").

8

A decision from this District has also noted that, "where a consumer has presented a lender with a colorable argument against liability, failure to note the dispute in any credit report may be 'misleading' and therefore 'incomplete or inaccurate' within the meaning of § 1681s–2(b)." *Shames-Yeakel*, 677 F. Supp. 2d at 1003–05. In the present case, as described above, Lute provides at least a colorable argument regarding the potential discharge of the two accounts. BANA's failure to mark an account[3] as disputed may "materially alter how the reported debt is understood" and, as a result, be misleading. *Gorman*, 584 F.3d at 1163.

Lute's motion, however, seeks to extend the rule in such a way as to convert § 1681s-2(b) into a de facto strict liability statute for a furnisher's failure to note an account as disputed under § 1681s-2(a). Lute claims that other circuits hold that "the failure to credit report an item as in-dispute is misleading and inaccurate" and that "[a] reasonable investigation would have resulted in an accurate credit report" in this case. (Dkt. 199 at 6.) But the cases Lute cites do not go so far—they simply hold that a furnisher's failure to report a dispute *may* constitute a material inaccuracy on a plaintiff's credit report. *See Gorman*, 584 F.3d at 1164 (noting that "[a] disputed credit file that lacks a notation of dispute *may well be* 'incomplete or inaccurate' within the meaning of the FCRA") (emphasis added); *Saunders*, 526 F.3d at 150 (holding that a jury "could reasonably conclude" that reporting the debt without mention of the dispute was misleading). In *Saunders*, the court stated that the defendant "would have us create a *per se* rule that furnishers are never obliged to report affirmative defenses or consumer disputes, regardless of how meritorious the dispute may be. Such a rule would be ill-advised." 526 F.3d at 150. But Lute would have this Court take the inverse as true: that furnishers are always obliged to report accounts as disputed, regardless of how meritorious the dispute may be, and that § 1681s-2(b) permits a suit to enforce that obligation. Such an outcome

---

[3] While Lute uses the plural "accounts" when addressing the failure to include a dispute notation, the ACDVs appear to show that the Mastercard account included the language "in dispute under FCRA" following the August 2018 disputes, but the Visa account did not have such a notation. (Dkts. 181-1 at 6; 190-1 at 74–77, 126–29.)

9

would effectively permit a private right of action under § 1681s-2(a) by making the failure to flag an account as disputed a form of automatic liability under § 1681s-2(b). This the Court will not do.

Based on both the underlying discharge issue and the derivative issue of the "dispute" notation, summary judgment is improper as to BANA's reasonableness in its compliance with § 1681s-2(b). Summary judgment for BANA would be proper only where "the reasonableness of [its] procedures is beyond question." *Westra*, 409 F.3d at 827. BANA points the Court to several ostensibly appropriate actions it took in response to dozens of Lute's past disputes, including those it took in response to the two August 2018 disputes. However, for the reasons stated above, this Court determines that the reasonableness of BANA's procedures is not beyond question, and it denies BANA summary judgment on this issue.

For the reasons above, the Court also denies summary judgment for Lute as to whether BANA's failure to notate one of BANA's accounts as disputed means it did not comply with § 1681s-2(b).

Damages

Lute claims he is entitled to damages as a result of BANA's purported FCRA violations. BANA argues that summary judgment should be granted in its favor because Lute fails to show that BANA's alleged violations caused his claimed damages in this case. "To prove a negligent violation of the FCRA, a plaintiff must establish 'actual damages.'" *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1194 (7th Cir. 2021); 15 U.S.C. § 1681o. To obtain an award of actual damages, "a plaintiff bears the burden of showing 'a causal relation between the violation of the statute and the loss of credit, or some other harm.'" *Aleksic v. Clarity Servs., Inc.*, No. 1:13-cv-7802, 2015 WL 4139711, at *8 (N.D. Ill. July 8, 2015) (Guzman, J.) (quoting *Crabill*, 259 F.3d at 664). In addition to pecuniary harm, such as the denial of credit, an FCRA violation may cause non-pecuniary harm, such as emotional distress. *Persinger*, 20 F.4th at 1194. A plaintiff carries a heavier burden to survive

10

summary judgment on claims for emotional distress. *Whiting v. Harley-Davidson Fin. Servs.*, 534 F. Supp. 2d 823, 834 (N.D. Ill. 2008) (Shadur, J.). The Seventh Circuit maintains a "strict standard for a finding of emotional damage 'because [accounts of emotional distress] are so easy to manufacture.'" *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004) (quoting *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 880 (7th Cir. 2001)).

Lute claims that he sustained actual damages when he could not obtain a construction loan because of BANA's alleged misreporting of his accounts. Lute sought a loan from two loan companies, Farm Credit Mid-American ("Farm Credit") and Contour Mortgage. However, Lute all but concedes that he does not base his claimed damages on the Farm Credit loan denial. (*See* Dkt. 189 at 15 n.31.) Even assuming that Lute maintains the Farm Credit denial as part of his sustained damages, the document notifying Lute of the loan denial itself forecloses the possibility that BANA's reporting could have caused the denial because none of the three provided reasons (insufficient income, insufficient liquidity, and inadequate capital or assets) related in any way to BANA's alleged reporting violation. (Dkts. 176-2 at 10–11; 181-10 at 2–3.)[4]

The Contour Mortgage denial is a different story, however, and one that requires disposition of BANA's motion to strike the declaration provided by Krystal Keller. (Dkt. 196.)[5] In its motion, BANA seeks to strike the declaration of Krystal Keller, which Lute attaches to both his opposition to BANA's motion for summary judgment and his reply in support of his own motion for summary judgment. (Dkts. 189-7 & 199-2.) BANA argues that the declaration is a "failed attempt to cure the

---

[4] In addition to the loan denial notification, Lute attaches an email regarding the loan denial to his motion for summary judgment. (Dkt. 181-10 at 4.) Even if this email could provide some support for Lute's damages claim, the Court need not address it. Lute fails to counter BANA's hearsay or causation challenges. (Dkts. 190 at 8; 191 at 6.) Indeed, Lute does not even mention the Farm Credit loan in his reply.

[5] To avoid any confusion, the Court notes that the briefing on BANA's motion to strike the Keller declaration is non-sequential. *See* Dkts. 196, 157, and 159. This is because the Court denied BANA's original motion to strike as moot, and BANA later re-filed a nearly identical motion at Dkt. 196. Because the parties had already submitted briefing on this issue, the Court declined to accept any additional briefing.

hearsay" in a loan denial letter from Contour Mortgage. (Dkt. 196 at 2–3.) In particular, BANA argues that the declaration should be stricken because it is an end-run around the magistrate judge's discovery order prohibiting Lute from deposing Ms. Keller, and also because the declaration is inadmissible hearsay that fails to meet the requirements of the business records hearsay exception under Federal Rule of Evidence 803(6).

First, the Court does not agree that the declaration amounts to a discovery violation. The magistrate judge's April 28, 2021 order denied Lute's second request to take Keller's deposition, explaining that "in November 2019, this Court previously declined to extend the discovery completion deadline to permit Plaintiff to take this very same deposition because this discovery should have been done (and could have been done) during the eight months of past discovery." (Dkt. 173. (quotations and citations omitted).) But a records custodian need not be deposed in order to satisfy FRE 803(6). *See Savanna Grp., Inc. v. Trynex, Inc.*, No. 10-cv-7995, 2013 WL 66181, at *7 (N.D. Ill. Jan. 4, 2013) (St. Eve, J.) (explaining that the party seeking the document's admission "need not have secured already the deposition testimony of [the custodian or qualified witness]. Instead, he only need establish that the document has 'sufficient indicia of trustworthiness to be considered reliable.") (quoting *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 777 (7th Cir. 2006)).[6]

The only issue then is whether Ms. Keller's declaration satisfies the requirements of FRE 803(6). In order for the Contour Mortgage letter to be admissible as a business record under FRE 803(6), the declaration must lay a proper foundation as to the letter's reliability. *Collins v. Kibort*, 143

---

[6] BANA also takes issue with the fact that Keller was not identified in Lute's initial Rule 26(a) disclosures or any amended disclosures. (Dkt. 196 at 2.) To the extent that BANA seeks to strike the declaration on this basis, it has cited no case law or identified any rule warranting the relief sought. (Dkts. 196 1–2; 159 at 1–3.) Instead, BANA simply argues that Lute should not be permitted to "circumvent his obligations under the Federal Rules." (Dkt. 196 at 2.) This is insufficient. *See White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("[P]erfunctory and underdeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived."). Nor does BANA adequately respond to Lute's argument in his opposition that the absence of Keller in Lute's initial disclosures was harmless, because Keller was "repeatedly disclosed and identified as an individual with knowledge in this litigation," including in Lute's interrogatory responses and document production. (Dkt. 157 at 7–10.)

12

F.3d 331, 337 (7th Cir. 1998). "To establish that foundation at summary judgment, 'the party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to introduce the record as evidence at trial, for example, a custodian or anyone qualified to speak from personal knowledge that the documents were admissible business records.'" *NRRM, LLC v. Mepco Fin. Corp.*, No. 10 C 4642, 2013 WL 4537391, at *5 (N.D. Ill. Aug. 27, 2013) (Feinerman, J.) (quoting *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000)). To qualify as a business record, the document must be "(1) kept in the course of a regularly conducted business activity, (2) made at or near the time of the events it records and (3) created by a person with knowledge." *Lamar v. Experian Info. Sys.*, 408 F. Supp. 2d 591, 596 (N.D. Ill. 2006) (Shadur, J.) (citation and internal quotations omitted).

While the declaration is not exhaustive in content, the Court finds that it provides sufficient information for the letter to meet FRE 803(6)'s requirements. Ms. Keller's declaration states that she provided the record on March 5, 2019 after assisting Mr. and Mrs. Lute with their construction loan application in February and March 2019. (Dkt. 189-7 at 2.) The declaration further states that the denial letter was part of "the normal course of [Keller's] business practices" as a Loan Specialist at Contour Mortgage during the relevant period in 2019. (*Id.*) In this case, the declarant was also the letter's author. For these reasons, the Court denies BANA's motion to strike the Keller declaration. The denial is without prejudice to BANA raising any appropriate challenges to foundation or other grounds prior to or during trial.

Having declined to strike the Keller declaration, the Court considers whether the March 5, 2019 loan denial letter from Contour Mortgage arguably establishes a causal link between BANA's alleged misreporting and the loan denial. The loan denial letter states as follows: "Due to the 2 open Bank of America accounts on your credit report that are reporting balances on both, we are unable to proceed with your loan currently." (Dkts. 181-10 at 1; 189-7.) The letter goes on to say that

"[t]he accounts must be deleted form your credit reports or reporting a zero balance," and directs Lute to let Ms. Keller "know when the reporting error has been corrected and we can move forward." (*Id.*) In response, BANA points to the fact that Lute had at least four other accounts negatively reporting, including three reporting as charged off, to show that BANA's reporting of the two at-issue accounts was not responsible for the loan denial. (Dkt. 176 at 17–18.) BANA further argues that Lute "fails to recognize that even if BANA were reporting the Accounts as charged off with a zero balance instead of charged off with a balance owed, the charged off reporting would still show up to creditors as a negative item on Plaintiff's credit report." (*Id.* at 18.) The Court finds that material issues of fact remain as to whether BANA's alleged misreporting of the two at-issue accounts following Lute's disputes contributed to this loan denial.

In addition to the loan denials, Lute alleges that BANA's violations were responsible for a significant increase in his rent. Specifically, Lute claims that "[d]ue to delays in obtaining the construction loan and moving residences as planned, [his] landlord increased his rent by 50% and put him on a month to month lease which could be ended with only 30 days notice." (Dkt. 181-2 at 4, ¶ 16.) Lute attaches to his motion for summary judgment a residential lease with handwritten notes stating that: (1) the lease was extended from December 2018 through the end of March 2019 at $1,000 per month; and (2) the lease would proceed on a monthly basis at $1,500 per month beginning in April 2019. (Dkt. 181-10 at 5–10.) Lute also attaches three checks showing rent payments of $1,500 for April to June 2019. (*Id.* at 11–13.) BANA objects to Lute's inclusion of this evidence on hearsay grounds, which Lute does not counter. (Dkt. 190 at 8.) The Court need not address the hearsay issue, however, because Lute has made no attempt to connect the dots from BANA's reporting on the accounts to the alleged 50% increase in his rent. The necessary causal connection is simply not present in the record before the Court.

14

Lute also claims that BANA's inaccurate reporting caused him significant stress, which ultimately led to him needing a major surgery. As to Lute's alleged emotional damages, he claims that he suffered "extreme emotional damages of stress, frustration, disillusionment and trouble sleeping" because of his inability to fix his credit and obtain a loan. (Dkt. 181-2 at 4, ¶ 13.) Lute testified in his deposition that he was "consumed with concern for the future, hopelessness about the situation, and stress which has made it impossible to sleep at night with [*sic*] the aid of Tylenol PM." (Dkt. 181-4 at 31.) BANA argues that Lute's emotional damages are based solely on his own conclusory statements, which do not meet the "strict standard" for emotional damages. (Dkt. 176 at 21 (citing *Sarver*, 390 F.3d at 971).) However, a plaintiff's own testimony can be sufficient to support a claim for emotional damages if reasonably detailed. *Hanson v. Experian Info. Sols., Inc.*, No. 10 C 2022, 2012 WL 280706, at *4 (N.D. Ill. Jan. 27, 2012) (Gettleman, J.). While Lute's testimony alone may not have passed muster, he has also submitted that of an expert psychiatrist, Dr. Grigory Rasin, M.D. BANA maintains that Dr. Rasin's disclosure is unavailing because it is also based on Lute's own statements. It is true that Dr. Rasin's report includes statements about what Lute told him. But the report also includes Dr. Rasin's observations and findings, including those about Lute's tense and anxious demeanor while describing his credit dispute with BANA. (Dkts. 176-4; 199-3.) Based on the record before the Court, the evaluation of Lute's emotional damages claim is "a task best left to the jury." *Whiting*, 534 F. Supp. 2d at 834 (quoting *McKeown v. Sears Roebuck & Co.*, 335 F. Supp. 2d 917, 933 (W.D. Wis. 2004)).

Additionally, as a result of his alleged stress, Lute claims that he gained a significant amount of weight, requiring him to have bariatric surgery in August 2019. (Dkts. 181-1 at 14–15; 181-2 at 4, ¶ 17.) Lute testified that, from August 2018 to May 2019, he put on 85 to 90 pounds as a result of "nervous overeating," "disillusionment over being able to get the loan," and "feelings of depression, sadness, frustration, all leading to just mindless eating." (Dkt. 181-4 at 32.) BANA argues that

15

Lute's bariatric procedure did not stem from stress linked to his loan denials but instead from his "longstanding weight gain and obesity problems that he has faced throughout his adult life." (Dkt. 176 at 18.) Although BANA points to evidence that factors outside of Lute's dispute with BANA may have led to Lute's weight gain and need for surgery, determining the extent to which each factor contributed is not appropriate for summary judgment. *Whiting*, 534 F. Supp. 2d at 834.

In sum, Lute has not carried his burden to show a causal connection between the alleged FCRA violations and the Farm Credit loan denial or purported rent increase, and the Court denies his motion for summary judgment and grants BANA's motion for summary judgment as to those claimed damages. However, there remain genuine issues of material fact as to whether Lute's credit disputes with BANA caused the Contour Mortgage loan denial, as well as his emotional and physical health-related damages. The Court, therefore, denies both parties' motions for summary judgment as to those claimed damages.

Finally, Lute seeks statutory damages, for which he must show that BANA willfully violated the FCRA. 15 U.S.C. § 1681n. A company willfully violates the FCRA if it acts in reckless disregard of its requirements. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, 127 S. Ct. 2201, 167 L. E. 2d 1045 (2007). A company recklessly violates the FCRA when its action is "not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

Lute has produced insufficient evidence that BANA willfully failed to comply with the FCRA. Lute claims that BANA has a blanket policy of refusing to note as disputed all accounts in a final status, which, as relevant here, includes accounts that are charged off. (Dkt. 181-1 at 13.) This policy, he contends, demonstrates willfulness. But Lute's contention is belied by the reporting on at least one of the accounts at issue in this case, which BANA reported as "in dispute under FCRA." (Dkt. 190-1 at 127.) This Court already determined that it would not hold BANA strictly liable in a

private right of action for an alleged failure to adhere to § 1681s-2(a)'s requirements. The Court's decision applies to such liability based on both negligence and willfulness. Additionally, as discussed above, the state of the law surrounding the legal effect of a long-term cessation of debt collection efforts combined with the issuance of a 1099-C is convoluted enough to confound courts and create varied decisions across the country. A furnisher seeking to reasonably investigate such a dispute may well err. Though the Court determined that the totality of evidence sufficed to create an issue of fact regarding BANA's reasonableness from a negligence standpoint, the evidence does not meet the heightened requirement to show willfulness. The Court thus grants summary judgment for BANA and denies it for Lute on the issue of whether any alleged FCRA violation by BANA was willful.

**Conclusion**

For the foregoing reasons, the Court denies Plaintiff's partial motion for summary judgment [181], grants in part and denies in part Defendant's motion for summary judgment [175], and denies without prejudice Defendant's motion to strike [196].

IT IS SO ORDERED.

Date: 3/31/2022

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge